## FIELD vs. THE CITIZENS' INSURANCE COMPANY.

1. An insurance declared to be "upon the freight bill" of a steamboat, is an insurance that the boat shall earn freight. And the insurer is as responsible if the boat fail to earn freight by an accident to the boat, as by any damage to the cargo.

2. Where such a policy was executed, and the boat was injured in the hull so as to lose the voyage, by abandoning the freight bill, she would recover on the policy.

3. An agreement, however, after an accident by which the boat had lost the voyage, "that the insurers would be bound by their policies on cargo and freight bill, by a transfer of same" to another boat, exempts the insurers from liability to first boat.

NAPTON, J., dissenting on this point.

## APPEAL from St. Louis Circuit Court.

LESLIE & DARBY, *for Appellant, insist:*

That the policy of insurance is a policy upon the *freight bill,* and that the assured are entitled

to recover, if, from any of the casualties covered by the policy, the owners of the boat were prevented from earning freight on the voyage they effected the insurance for.   Damage to the boat (without actual loss of the goods and property comprising the freight) by which the voyage was broken up and the freight not earned, is one of the risks covered by the letter and legal construction of the contract of insurance.'

The same peril that would have made the underwriters liable for insurance upon the goods, in case of actual loss of the goods, will, in this case, entitle the plaintiff to recover the amount insured on the freight bill.   Such is the written contract or policy, and the manifest intention of the parties; which intention of the parties is a settled rule of law by which to determine the liability of the underwriters in all contracts of insurance.   Hughes on Insurance, 132; 2 Stark R., 576 ; Philips on Insurance, 1st vol., p. 43, 44, 48, 54.   As to abandonments, see 2 Phil. on Insurance, 230, 231, 232.   What is evidence of intent, 2 Phil. on Ins., 734.   Effect as to conduct of agent, 2 Phil. on Ins., 439.

GEYER, *for Appellee, insists:*

1. There is nothing in the facts agreed, to sustain the last count; no money of the plaintiff was ever received by the defendant—not even the premium of insurance.   The only policy produced is admitted to be sealed with seal of the defendant, and consequently the fourth, fifth and sixth counts are neither of them supported by evidence.

2. The three first counts are inconsistent with each other, and therefore if no other objection existed, would prevent any judgment for the plaintiff until he should elect on which he would enter it; certainly there can be no judgment on all of them.   Lee vs. Muggeridge, 5 Taunt., 37; (1 E. C. L. R., 10) Hardy vs. Cathcart, 5 Taunt., 2; (1 E. C. L. R., 4) 1 B. & C., 161; Hallaway vs. Bennet, 3 T. R., 446.

3. Neither of the three first counts avers a loss by a peril insured against; neither is, therefore, good in law.   The consequence is, that there can be no judgment on either for the plaintiff.   If a verdict had been found on all the issues for the plaintiff, judgment would have been arrested.   2 Phil. on Ins., 631; 2 Chit. Pl., 170, n; 1 Phil. on Ins., 635; Story on Bailments, secs. 512, 516; Abbott on Shipping, p. 3, ch. 4, sec. 1 to 6; The William, 6 Rob., 316; Marsh. Ins., b. 1, ch. 7, p. 114.

4. The first and third counts are not supported by the evidence; neither of them named all the persons proved to be owners, and as such, interested.   In the first count, the averments do not include the plaintiff, who owned one-tenth.   In the third, the averments exclude the names of six owners, having four tenths of the interest.   The proof, therefore, varies from the averments.   2 Phil. Ins., 594, 595, 626; Newson vs. Douglass, 7 H. & J., 456; Pacific Ins. Co. vs. Catlet, 4 Wen. 75; Crawford vs. Hunter, 8 J. R., 594; Bell, et al. vs. Arsley, 16 East., 141.

5. The policy is not an insurance of freight against loss by reason of any disaster of the Glaucus.   The insurers are bound by the terms of the policy only to make indemnity for the loss of freight which shall be occasioned by any hurt, detriment or damage to the cargo by reason of perils of the river, &c.; that is, the insurers contract that the insured shall not be prevented from earning freight by reason of any injury to the cargo by the enumerated perils.   And in this case, *it is neither averred nor proved that there was any loss, hurt, detriment or damage to the goods;* but it is shewn affirmatively by the case agreed, that all the goods were carried to New Orleans, and there delivered to the consignees without injury.   Aguilar vs. Rogers, 7 T. R., 419; Robinson, et al. vs. Trench, 4 Ea., 135; 1 Phil. Ins., 43; Cook vs. Graham, 3 Cranch, 335; Gorse vs. Lore, 1 John. Cases, 341; 1 Phil. on Ins., 704, 706; 2 Phil. Ins., 357-9, 325, 350; Clark vs. Moss, M. & F. Ins. Co., 2 Pick., 104; Everth vs. Smith, 2 M. & S., 278; Taltus vs. Ocean Ins. Co., 12 John. R., 107; 2 Phil. on Ins., 305, 350, et seq.; Green vs. Roy. Ex. Ass. Co., 6 Taunt., 63; 2 Phil. Ins., 211; Lutredge and others vs. Gray, Abbott on Shipping, 298.

6. Even assuming that the policy covers a loss by damage to the vessel, the case agreed does not entitle the plaintiff to recover, because—

1st. The Glaucus might have been, and was in fact, repaired in a reasonable time.. There was nothing to prevent the captain from carrying forward the cargo and earning freight. He was bound to do so, under the circumstances; there was no necessity to tranship the cargo or abandon the voyage.

2nd. The abandonment of the voyage was the voluntary act of the master, without necessity or just cause, to engage and employ the vessel in a new, perhaps more profitable, voyage.

3rd. It does not appear that there was any loss of freight; on the contrary, the goods were delivered at the port of destination, and freight earned; and the freight so earned was not abandoned to the underwriters, and nothing to the contrary appearing, is presumed to have been received by the insured.

4th. The whole cargo might have been carried forward on board the Glaucus, as well as the twenty tons; there was no interference of the shippers to prevent it; in fact, there was no obstacle but the pleasure of the master against which the underwriters did not insure.

5th. There was no extra freight charged or paid, for that part of the cargo transported on the Merrimack, (170 tons) and as to the sum paid the Sarah Ann, it was not a matter of necessity occasioned by any previous disaster. 1 Phil. Ins., 590, 704, 706; 2 Phil. Ins., 213, 355; Mordy vs. Jones, 4 Barn. & C., 394; Clark vs. Mass. M. & F. Ins. Co., 2 Pick., 104; Herbert vs. Hallet, 3 John. Cases, 93; Barkley vs. Sterling, 6 M. & S., 6; Bradhurst vs. C. Ins. Co., 9 J. R., 21; Griswold vs. N. Y. Ins. Co., 3 John. Cases, 93; 3 John. Cases, 321; Sheefler vs. N. Y. Ins. Co., 9 J. R., 21; Mayo vs. Maine M. & F. Ins. Co., 4 Mass., 374; Salters vs. Ocean Ins. Co., 12 J. R., 107; 4 Wend., 45; Everth vs. Smith, 2 M. & S., 278; Green vs. Royal Exch. Ass. Com., 6 Taunt., 63.

7. There having been no abandonment to the underwriters, and no actual total loss, the recovery, if there could be any, would be only partial, which would include only extra expenses—that is, the difference between the freight received and the cost of carrying forward the cargo. The assured is not to recover the whole freight insured, and also receive from the shippers full pay; but the facts agreed do not shew any extra expense. The amount paid to the Sarah Ann, if regarded as a partial loss, does not amount to ten per cent., and is therefore not recoverable under the policy. 2 Phil. Ins., 356; Thompson vs. Rawcroft, 4 East., 34; Greene vs. R. Ex. Ins. Co., 6 Taunt., 63; 2 Phil. Ins., 208; Cocledge vs. Gloucester M. Ins. Co., 15 Mass., 345; Coffin vs. Storer, 5 Mass. R., 252; Barcley vs. Sterling, 6 M. & S., 6; 9 J. R., 21; 10 J. R., 107; Everth vs. Smith, 2 M. & S., 278.

8. The averment that Spencer Field effected the insurance for and on account of the persons named, as their agent, and for their use and benefit, and which is denied by the pleas, is not supported by the case agreed. As captain and part owner, he had no authority to effect insurance.— 2 Phil. Ins., 555-6; 2 Phil Ins., 626, and cases there cited.

9. The policy was by agreement of the parties transferred to the Merrimack, as to all except 20 tons, so that when the transfer was made, it operated as an insurance on freight on the Merrimack with the same effect and to the like extent as if the name of that vessel had been originally inserted, instead of that of the Glaucus; and that cargo being delivered in safety, discharged the policy as to seventeen-nineteenths of the subject insured. The residue was carried forward on the Glaucus, and as to that, the policy remained in full force until the delivery at New Orleans, when it was discharged.

10. No expense of any kind was incurred previous to the agreement to transfer the policy to the Merrimack and Osage Valley. Captain Field availed himself of that agreement as to seventeen-nineteenths of the cargo, and it was his own choice to reserve a part for his own boat, and to incur the expense of employing the Sarah Ann, and not the result of any disaster.

McBRIDE, J., *delivered the opinion of the Court.*

This was an action of debt, brought in the Circuit Court of St. Louis county by Spencer Field against the Citizens' Insurance Company upon a policy of insurance.

Upon an agreement of facts, the case was submitted to the court, who found for the defendant; whereupon, the plaintiff moved for a new trial, which being refused, he excepted, and appealed to this Court.

The amount insured was $2,000. The policy used was the general printed form used by the company to cover loss upon goods and merchandize, setting out that it was "upon all kinds of lawful goods and merchandize, laden or to be laden on board the good steamboat Glaucus," &c., with an enumeration of the following perils, to-wit: "Touching the adventures and perils which the assurers are content to bear and take upon them in this voyage, they are of seas, rivers, rovers, thieves, fires, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods," &c. At the end of this printed policy, was the following clause, in writing, to-wit: "This insurance is declared to be on the freight bill of the steamboat Glaucus, at and from St. Louis to New Orleans." The policy was dated the 4th September, 1841, and was signed by the President, and sealed with the corporate seal of the company, and attested by the Secretary.

It was agreed at the trial, that on the 5th September, 1841, the steamboat Glaucus (Spencer Field being master and part owner) left the port of St. Louis for New Orleans, well and sufficiently found and provided in all things, and in all respects seaworthy, with a cargo of various articles, the aggregate freight of which agreed to be paid by the shippers amounted to $1790. That after said boat left St. Louis, there was shipped on board of her a few barrels of apples and some live stock. On the next morning, the 6th September, about sixty miles below St. Louis, the boat struck a snag, which bulged some of her timbers and caused her to leak very much, rendering it necessary to discharge the cargo.— She was stopped for that purpose, and the cargo discharged and secured without injury. It was found, on examination, that about ninety of her timbers were broken: she was thereupon temporarily secured, and being taken to St. Louis, was thoroughly repaired in about two weeks. On the arrival of the Glaucus at St. Louis, Captain Field obtained from the insurance office an instrument of writing, as follows: "The Citizens' Insurance Company will consider themselves bound by their policy of insurance on cargo and freight bill, by the transfer of the same to the steam-

boats Merrimack and Osage Valley, on the part of the owners of the steamboat Glaucus;" which was signed by the Secretary of the company by its authority, and was executed and delivered to Captain Field, at his request, and was understood and intended by the Secretary to transfer the policies to the subject insured, in case of transhipment to the boats named. No premium or other consideration was paid by Captain Field to the Insurance Company for this transfer.

Captain Field then employed the steamboat Merrimack to transport the late cargo of the Glaucus from the place of disaster to New Orleans, except twenty tons, and the same was delivered without injury to the consignees. The Glaucus being repaired, was advertised for a new voyage to New Orleans, and after a detention of four or five days at St. Louis to receive cargo, she departed to New Orleans with a full cargo, except twenty tons, the room for that quantity being reserved to receive that part of her former cargo not taken by the Merrimack. The river being low, Captain Field employed the steamboat Sarah Ann, for the sum of $100, to carry the twenty tons from the place of disaster to the mouth of the Ohio river, where it was transferred to the Glaucus, and thence safely carried to New Orleans.

We shall not undertake an investigation of all the questions raised by counsel in this case, but content ourselves with an examination of such points, the settlement of which will be decisive of this controversy.

The first inquiry is as to the proper construction to be given to the policy of insurance. The form used is the printed general form used by the company in insurance on the cargo of boats. declaring it to be an insurance on $2000, " upon all kinds of lawful goods and merchandize, laden or to be laden on board the good steamboat Glaucus, whereof is master for the present voyage, Captain S. Field, &c., beginning the adventure upon the said goods and merchandize from and immediately following the loading thereof on board the said steamboat at St. Louis, aforesaid, and shall continue and endure until the arrival of said boat or vessel at the port of destination, &c. The goods and merchandize hereby insured are valued at $——. Touching the adventures and perils which the assurers are content to bear and take upon them in this voyage, they are of the seas, rivers, fires, robbers, thieves, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandize, or any part thereof, by reason of the damage aforesaid, &c.; and in case of loss, the assured shall abate two per cent. of the amount of such loss, to be paid in sixty days

after proof and adjustment thereof, and proof of interest in said *freight bill,* &c."

At the end of this printed general form is the following clause in writing: "This insurance is declared to be on the *freight bill* of steamboat Glaucus, at and from St. Louis to New Orleans."

Some confusion and difficulty in the construction of this policy would arise from its inconsistency, produced by appending the latter clause in writing, but for the established rule adopted by the courts in construing such instruments. In 1 Phil. on Ins., p. 54, it is said that, " the policy being a printed form, with the blanks filled up in writing, if there is any doubt upon the sense and meaning of the whole, the words superadded in writing are entitled to have a greater effect attributed to them than the printed words, inasmuch as the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning."

"Words written in the margin of the policy apply indefinitely to the whole of the policy, and are considered as controlling the sense of the parts of the printed policy to which they apply. As for instance, where the word *ship* is written in the margin of a policy, or *freight* or *goods,* in such case, the general terms of the policy applicable to other subjects besides the particular one mentioned in the margin, are thereby considered as narrowed in point of construction to that one."

Another rule of construction is, that the policy is to be construed liberally for the benefit of the assured, and with a due regard to its design and object as a contract of indemnity. 3 East., 579; 9 ib., 81; 1 Burr., 348.

With the aid of the foregoing rules, we are at no loss to ascertain the true intent and meaning of this policy. Why the general form here used should have been adopted, was owing, most likely, to the fact that the general formula being applicable, the fore part of the policy declaring it to be an insurance on goods and merchandize, would be controlled by the latter or written part, which declares it to be an insurance on the freight bill. But whatever may have been the reason for using the general form, we are very clear that the intention of the parties, as gathered from the writing, was to limit the insurance to the freight bill; that is, it was an undertaking on the part of the insurance company that the plaintiff should earn freight.

In marine insurance, there are several distinct subjects of insurance, such as the vessel, the cargo, and the freight bill. The vessel may be the property of one individual, the cargo may belong to another, whilst

the freight bill may be due to a third; and each having an interest in the contemplated trip, may rightfully obtain insurance on their respective interests.

But, admitting that the assurers have undertaken that the boat shall earn freight, still it is contended that any injury to the hull of the boat, by which the freight is lost, is not one of the hindrances or perils insured against in the policy; for, by the use of this form of policy, it was intended that the damage by which the earning of freight would be defeated, must be to the cargo of the boat. Suppose that, instead of using the words *freight bill*, in the clause under consideration, it had read, "this insurance is declared to be on the *hull* of the steamboat," &c., could there be any reasonable doubt, but that against the perils enumerated in the policy, the company had undertaken to insure the hull of the boat on her trip to New Orleans? It would not do to say, that although the insurance is on the hull of the boat, yet the damage insured against must happen to the cargo, otherwise the company are not liable. And yet it would be just as reasonable as to hold that an insurance on the *freight bill* is confined exclusively to the damage done the cargo.

If no safe or satisfactory solution of the intention of the parties can be had by a reference alone to the policy, we must, in connexion with the policy, look to the interest of the assured, for it was that interest, doubtless, which he was endeavoring to protect. The assured is stated in the policy to be master of the boat, and in the evidence he is stated to be the captain and part owner of the boat. He owned no part of the cargo.— His interest, therefore, would be, first, to secure the freight against loss or forfeiture, whether from damage to the cargo or hull of the boat; and, second, in guarding against injury to the hull of the boat. If damage should happen to the cargo, it would not necessarily follow that there would be a forfeiture of freight; but if the boat itself should receive such damage as to prevent her from making the trip, the freight, or a part thereof, would be lost. Besides, there is more danger of loss of freight by means of injury to the hull of the boat, than by damage to the cargo. It is not presumable, therefore, that Captain Field would insure against the less and not the greater hazard. We are therefore of opinion that the insurance was intended to cover all loss of freight in consequence of damage to the cargo or hull of the boat, by means of any of the enumerated perils in the policy. 7 Cowen, 564.

The next question which demands our attention is, the right of a boat which has been injured to retain her cargo until she refits and is in a condition to carry it to the port of destination. It is difficult to lay down

any rule which would be just in its application in all cases, for what would be reasonable time in one case, would be inadequate in another; hence every case that arises must be governed by surrounding circumstances—such as the the length of time ordinarily required to make the trip, the facilities for transhipping, the character of the cargo, and the state of the market at the port of destination. What are the facts in this case? Ordinarily, the trip to New Orleans can be made in half the time which was required to refit the boat; the opportunity of transhipping occurred almost daily; cargoes generally are of that description which makes it important that they should be carried forward without delay. These facts, coupled with the uncertain state of the market below, enable us to say, that in this case the captain of the boat would have had no right to retain the cargo until he could refit and carry it forward in his own boat.

At this point, if the plaintiff had abandoned as for a total loss, we are of opinion he would have been entitled to a recovery; but, at his instance and request, the policy was transferred to two other boats, by the following writing: " The Citizens' Insurance Company will consider themselves bound by the policies of insurance on cargo and freight bill by the transfer of same to the steamboats Merrimack and Osage Valley, on the part of the owners of the steamboat Glaucus." This was understood by the secretary of the insurance company, who made the writing by authority of the company, to transfer the policy to the boats named, in case of transhipment. This appears to be the obvious meaning of the writing, and must have been so understood by the plaintiff, otherwise it would have been an original transaction, and the company entitled to their usual premium in such cases. No premium was paid or agreed to be paid by the plaintiff to the company for this transfer, and if the transfer gave to the boat upon which the cargo was transhipped the right to recover in the event she did not earn freight, then the company would be in the condition of being twice held liable upon the same policy, without having received any consideration for the second. But such is not a fair construction of the writing; on the contrary, we are of opinion that the transfer of the policy from the Glaucus to the other boats obtained from the defendant by the plaintiff, operated as a release of the defendant's liability under the policy for the injury complained of.

For the foregoing reasons, the judgment of the Circuit Court ought to be affirmed.

Scott, J.—I concur in affirming the judgment.

NAPTON, J., *dissenting*.

I do not concur in the construction given to the writing signed by the secretaries of the insurance companies at the suggestion of Capt. Field. I understand that paper as merely an assurance on the part of the companies that the transfer of the cargo of the Glaucus to the steamboats Merrimack and Osage Valley would not be regarded as forfeiting or affecting in any way the rights acquired under the policies which had been effected at their offices. The master of the Glaucus seems to have thought it his duty to forward the cargo, or the greater portion of it, by the first opportunity, without retaining it until his boat could be put in a condition for running. With this impression, he made arrangements with the Merrimack and Osage Valley; but being solicitous that the seaworthiness of these boats should be put beyond dispute, and that the insurers of freight and cargo should run no risks by the transfer, he procured the paper in question. That paper, as I understand it, was simply a declaration on the part of the companies of their confidence in the two boats selected by Captain Field, and of their assent to the transfer, so that it should not in any respect alter the rights of the insured under either policy. In other words, it was a recognition by the underwriters of a continuance of their responsibility for the cargo, notwithstanding its transfer to other boats than the one upon which it was originally insured, and an agreement that the persons interested in the freight bill of the Glaucus should forfeit no rights by reason of this transhipment. How can it be interpreted otherwise? What interest had Captain Field, or his co-partners or co-tenants of the steamboat Glaucus, in securing the freight bills of the Merrimack or Osage Valley? If such a thing was even desirable, how could the insurance upon the freight bill of the Glaucus be transferred to two other boats without any new premium? The insurance was, that the Glaucus should earn freight, and not that the Merrimack or any other boat should earn freight. Captain Field, acting as agent for the other owners, and also for the freighters, desired to relieve himself from all responsibility in sending on his cargo by these two boats. He wished to select such boats as would be acceptable to the insurance companies, and therefore consulted them, and for this purpose, procured the paper in question. This is the only construction I am able to give to it; and with this construction, the rights of the parties are not altered.

This was an insurance of freight, and it is said that such insurances have no reference to the hull of the boat, and therefore, that an injury

to the hull is not within the policy. It is true, that an insurance on freight has no reference to the hull, but its object is to protect the assured from being deprived, by any of the perils insured against, of the profit he would otherwise earn by the carriage of the goods. It is therefore necessary to a recovery, that some of the perils insured against should have prevented the earning of freight. But it is perfectly immaterial whether the peril has been to the hull or the cargo; if it is a peril insured against, it is sufficient. If the boat be totally lost or rightfully abandoned before the voyage is completed, she cannot earn full freight, and the underwriters are bound to indemnify the assured for the loss he has sustained. If no freight *pro rata iteneris* has been earned, or the expense of sending on the cargo by another vessel is equal to or exceeds the whole amount of freight agreed upon by the charter party, or if no other conveyance can be had at the port of necessity, and the owner refuses to receive the goods, there is an absolute total loss of the freight, and no abandonment is necessary, because there is nothing left to abandon. Am. Ins. Co. vs. Centre, 4 Wend., 54; 12 John. R., 107. The conduct of the assured, in this case, in retaining twenty tons of freight, which they subsequently carried on in the Glaucus, after she was refitted, may be sufficient to repel the idea of a total abandonment. But the underwriters were responsible for the expense of sending on the cargo by the Merrimack and Osage Valley. It was Captain Field's duty to make this transhipment, under the circumstances of the case, and the underwriters are responsible for the expense attending it. I am therefore in favor of reversing the judgment.