ROBERT A. ROBERTSON et al., Respondents, *v.* THE ATLANTIC MUTUAL INSURANCE COMPANY, Appellants.

In case of a total loss of a vessel whose freight is insured, if no freight *pro rata itineris* has been earned, or if the expense of sending on the cargo by another vessel is equal to or exceeds the whole amount of freight agreed upon by the charter-party, there is an absolute, total loss of the freight, and no abandonment is necessary.

Those interested in the cargo saved are liable to contribute, in equable proportions, the expenses of sending on the cargo; an insurer upon the freight is one thus interested: and when the cargo is sent on for the benefit of salvage on the freight, the underwriters thereon are bound to pay the expense of transhipment.

In an action upon a policy of marine insurance upon the freight of a vessel from N. Y. to G., it appeared that the vessel was stranded just before reaching G. Plaintiffs having learned of the disaster from a telegram to others, which indicated a total loss of the vessel, called upon and notified defendant's president, who directed him to telegraph to the vessel's consignee to find out the condition of the cargo, and to advise with H., who he stated was the underwriter's agent, or defendant's agent, at G., and to take, at least, a fifty per cent average bond. Plaintiffs telegraphed accordingly. The consignee took the dispatch to H., and by his direction turned over the case to him. By the direction of H., a portion of the cargo was transported to and delivered in G., and freight collected or earned thereon; the expense of transportation was greater than the amount of the entire freight for the whole cargo. H. took an average bond from the owners or consignees of the portions of the cargo delivered, upon which payments were made or became due for the expenses of delivery. The amount of contribution and the "savings of freight" resulting therefrom did not appear. *Held*, that, under the circumstances, H. was the agent of defendant, and it was bound by his acts; that, by the direction given by defendant's president, it assumed the burden of attempting to deliver the cargo; it was in the knowledge and power of defendant to show the facts as to the delivery; and the onus was upon it to furnish the proof, if thereby its liability to plaintiffs would have been lessened or changed.

(Argued December 20, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York affirming a judgment in favor of plaintiffs, entered upon a verdict.

This action was upon an open policy of marine insurance to recover for the alleged total loss of freight of the brig "Ocean Wave."

Insurance for $3,600 upon the freight of said brig was underwritten August 16, 1867, on a voyage from New York to Galveston, Texas, valued " as per freight list," this amounted to $3,609. The brig, which was loaded ·by G. G. Young & Co., of New York, on commission, with a general cargo consigned to E. M. Stackpole & Co., of Galveston, was stranded on the bar, near Galveston, in a storm, and became a total wreck. Plaintiffs learned of the disaster through a telegram to Young & Co., as follows :

" During the gale at Galveston, 2d inst., brig Ocean Wave, Squires, from New York, not having out a sufficiency of chain, dragged her anchors into the breakers, when the chain was slipped and she drifted down about three miles, where the captain was washed off and drowned. The mate then drove her up on the beach, where she lay on the 5th, high and dry, bilged, and her cargo in her ; all the spars and some of the sails were saved."

Mr. Bergen, one of the plaintiffs, thereupon called upon a firm of average adjusters, who advised him to see Mr. Jones, defendant's president. This he did, showing to Mr. Jones the telegram, and asking him what should be done about ·the matter. Mr. Jones replied that he had better telegraph to Mr. Stackpole to find out the condition of the vessel, and to advise with Mr. Hunt, the underwriter's agent, or their (defendants') agent (the witness was not sure which), at Galveston, and to take, at least, a fifty per cent average bond. There was some talk about sending an agent, but Mr. Jones said that, on account of the yellow fever, it would be impossible to get an agent to go there. Plaintiffs telegraphed in accordance with Mr. Jones' instructions. Mr. Stackpole received the telegram and took it to Mr. Hunt, who told him to turn over the case to him (Hunt), as agent for the underwriters ; this Stackpole accordingly did. The principal portion of the cargo was saved ; that not damaged was delivered

to the consignees, and the rest sold. The freight on the portion delivered amounted to $2,676.96. The expense of delivering the portion of the cargo saved was $5,853.28. The expense upon the portion of the cargo upon which freight was collected exceeded, by over $2,000, the freight upon it. Mr. Hunt took an average bond from such of the consignees as received portions of the cargo. No statement of general average was produced on the trial, or exhibits of values necessary to such a statement, or to show what proportion of the salvage and general average expenses would fall on the freight.

The court directed a verdict for the plaintiffs for the full amount claimed; to which defendant's counsel duly excepted. A verdict was rendered accordingly.

*Samuel Hand*, for the appellant. There was not a total loss of freight. (*Bradhurst* v. *Col. Ins. Co.*, 9 J. R., 71; *Chapman* v. *Benson*, 5 C. B. [M. G. & S.], 330; 8 id., 950; *Philpott* v. *Swan*, 110 B. N. S., 270; *S. Mar. Ins. Co.* v. *Turner*, 1 Macq. [H. of L. Cas.], 334; *Lord* v. *Neptune Ins. Co.*, 10 Gray, 109; *Moreau* v. *N. S. Ins. Co.*, 1 Wheat., 219; *Gould* v. *Ins. Co.*, 20 La. Ann., 259; *Tarquy* v. *Hobson*, 4 Bing., 131; *Powell* v. *Gudgeon*, 5 M. & S., 431; *Salters* v. *Ocean Ins. Co.*, 14 J. R., 138; *Strong* v. *N. Y. F. Ins. Co.*, 11 id., 323; *Depau* v. *Ocean Ins. Co.*, 5 Cow., 63; *Ogden* v. *Ger. Mut. Ins. Co.*, 2 Duer, 204; *Fiedler* v. *N. Y. Ins. Co.*, 6 id., 282.) The expense incurred in taking the cargo from the wreck and carting it to Galveston was general average or salvage expenditure. (*Heyliger* v. *N. Y. F. Ins. Co.*, 11 J. R., 85; 37 N. Y. Supr. Ct. R., 442; *Mumford* v. *Com. Ins. Co.*, 5 J. R., 262; 2 Pars. on Ins., 371, 374; *Stratton* v. *Jarvis*, 8 Pet., 11.) The court should have directed a deduction of $3,000 under the second answer. (*Vassar* v. *Livingston*, 3 Kern., 248; *Thompson* v. *Rowcroft*, 4 East, 34.)

*John E. Parsons*, for the respondents. There was a total loss of freight. (2 Pars. on Mar. Ins., 68; *Irving* v. *Manning*, 1 H. L. Cas., 287; *Roux* v. *Salvador*, 3 Bing. [N. C.],

266; 2 Phil. on Ins., §§ 1485, 1630, 1632, 1643, 1644, 1725, 1647, 1648; *Bradhurst* v. *Col. Ins. Co.*, 9 J. R., 7; *Wallerstein* v. *Col. Ins. Co.*, 44 N. Y., 204; *Ins. Co.* v. *Fogarty*, 19 Wal., 640; *Willard* v. *Miller Mfg. Co.*, 24 Mo., 561; *Hugg* v. *Augusta Ins. & B'king Co.*, Taney's R., 159; *Salters* v. *Ocean Ins. Co.*, 12 J. R., 107; *Benson* v. *Chapman*, 6 M. & G., 792.)

Folger, J.   There is no doubt, but that the expense of transporting that portion of the cargo, which was in fact delivered in Galveston, the port of destination, was greater than the amount agreed upon for the entire freight of the whole cargo.   It is a rule that if no freight *pro rata itineris* has been earned, or if the expense of sending on the cargo by another vessel, is equal to or exceeds the whole amount of freight agreed upon by the charter-party, there is an absolute total loss of the freight and no abandonment is necessary, because there is nothing left to abandon.   (*Am. Ins. Co.* v. *Center*, 4 Wend., 45, 53, citing *Saltus* v. *Ocean Ins. Co.*, 12 J. R., 107; *Mount* v. *Harrison*, 4 Bing., 388.)

With this fact and this rule before us, we should have no difficulty in holding that the plaintiffs were entitled to recover the full amount of the insurance from the defendants, were it not that some portion of the cargo was actually delivered in Galveston, and freight collected thereon, or earned.

There was also an average bond taken from owners or consignees of portions of cargo, and payments were made or became due thereon, for the expenses of delivery. In view of the ruling in *Heyliger* v. *New York Firemen's Insurance Company* (11 J. R., 85), there can be no doubt that those interested in the cargo saved were liable to contribute in equable proportions to those expenses.   And the insurer upon the freight, is one thus interested, and when the cargo is sent on for the benefit of salvage on the freight, the underwriters thereon are bound to pay the expense of transhipment. (4 Wend., *supra.*)   If this contribution had been made, there is no question but that there would have been "savings of freight," which would

have belonged to the defendant, or would have gone to have diminished the recovery against them. But the facts do not appear in the case, which will enable a court to determine what that amount is. The defendants insist that the plaintiffs should have supplied these facts. Whether they are right in this contention, depends upon the construction to be put upon what took place between one of the plaintiffs and Mr. Jones, the president of the defendant. It seems that the plaintiffs were informed by a telegraph to other persons of the disaster to the vessel. One of them at once went to the office of a firm of average adjusters. From the nature of their business, it is plain that there was in the mind of the plaintiff as inducing that visit, the insurance on the vessel, the cargo and the freight, or some one of them, and that the object of it was to get information how to act in reference to the matter of insurance. The average adjusters advised the plaintiff to see Mr. Jones. Why, unless it was then made known to them, that the plaintiffs had this policy from the defendant? And what the object of the visit to Mr. Jones, the president of the defendant, but to make known to him, that the contingency had occurred or was likely to occur, whereby the defendants would be fixed in a liability to the plaintiffs, and to receive from him directions. The first matter talked of was the sending of an agent, which was given up as impracticable by reason of the yellow fever prevailing there. It is not a reasonable inference that the plaintiffs went to the average adjusters or to Mr. Jones, to learn how to care for the safety of the vessel or the cargo. The relations between the plaintiffs and Mr. Jones grew out of the contract of insurance, and it was that which brought them together; and it was to preserve the rights of the plaintiffs against the defendant, that the interview was had with the president of it. Nor is it a reasonable inference that with this in view, it was mere advice that was sought from Mr. Jones, for the result of which if followed, the defendant would not be responsible. The reasonable inference is, that the plaintiffs did not seek the advice, but the direction of the defendant, what should be done; a direction to be prompted

by the interest which the defendant had in the matter, and the consequences of which would fall upon it. Nor can we suppose that the president of the defendant understood it in other way than that, nor that the parties to the interview contemplated aught else than that what should be done in pursuance of the direction given, should be done for the benefit of the defendant, and upon its responsibility. The facts as stated in the telegraph message to the plaintiffs, showed that they could have but little of value left in the vessel. They had none in the cargo as owners. The reliance against loss, left to them, was in their insurance. It was to preserve this, that they were then alert. It was not natural, that with this motive, they would receive the communication from Mr. Jones, as his advice given by him without interest in it, and to be followed by them at their hazard; nor is it natural to suppose that the parties to the interview so regarded it. What took place between the plaintiffs and Mr. Jones is to be interpreted in view of the facts and information had by them at that time, and not by what has since transpired. It then appeared to them that the vessel was a total loss, and could never complete her voyage, and that the freight could never be earned, but by taking some other means of conveyance, and that of the expense of those other means, the defendant must bear a share. That there had been a cyclone so generally destructive to shipping was not then known to them, nor did they foresee that by that reason, the expenses of transporting the cargo over the beach would be so great. Therefore it appeared to them that the position of the plaintiffs was by far the best, and that they could repose upon their contract of insurance; and it also appeared to them that the defendant might obtain something of the amount to be paid upon the policy, from savings of freight. Had it then been known what would be the cost of taking the cargo to Galveston, the defendant might well have said, nothing can be saved of freight thereby and we will not interfere. It was not. The parties conferred and acted at a time when the position of the plaintiffs was one of superiority, and the defendant was in

such a plight, that to all seeming then it needed to act to make a saving from loss.

We feel forced to the same conclusion which was reached by the learned courts below, that by the direction given by Mr. Jones to the plaintiffs, the defendant assumed the burthen of attempting the delivery of the cargo to the consignees, that Hunt at Galveston was the agent of the defendant therein, and that it was in the knowledge and power of the defendant to show all the facts material upon the question of the expense of that delivery, and that if by proof of them the liability to the plaintiffs would have been lessened or changed, the *onus* was upon the defendant to make the proof.

It is not necessary to determine the character and effect of the defence secondly set up in the answer. Had the defendant relied upon it and asked judgment for the want of a reply, without going into proofs, the question now raised by the defendant would have been presented. But the defendant went to trial, and all the facts appeared either on inquiry made by it, or without objection taken by it raising the question now made. And it is now shown that the allegation of the answer is not true, and that the money received for freight was received by the agent of the defendant, and that that which was earned but not received, was due and owing to it and not to the plaintiffs.

On the whole case, the defences set up by the defendant have failed, and the judgment appealed from must be affirmed.

All concur.

Judgment affirmed.