## Case No. 4,838.

### FITZ v. The AMELIE.

[2 Cliff. 440.] [1]

Circuit Court, D. Massachusetts. May Term, 1865. [2]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 6 Wall. (73 U. S.) 18.]

F. C. Loring, for libellant.
C. W. Loring, for claimants.

CLIFFORD, Circuit Justice. The authority of a master to sell his ship under any circumstances was denied by some of the continental writers upon maritime law, and by some of the early decisions in the courts of the parent country. The reason given for the prohibition was, that such authority, if allowed, would tend to encourage fraud. Tremenhere v. Tresillian, 1 Sid. 452; Johnson v. Shippen. 2 Ld. Raym. 984; Reid v. Darby, 10 East, 143; Abb. Shipp. (5th Ed.) 9; Ekins v. East India Co., 1 P. Wms. 395.

A careful scrutiny of those cases. however, will show that the circumstances in most of them were not such as to justify a sale in any view of the law; and the decision in some of them was placed upon that ground. Subsequent cases have clearly established the doctrine even in that country, that the master in a case of extreme necessity may sell the ship for the benefit of the owners or of all concerned. Hayman v. Molton, 5 Esp. 65; The Fanny & Elmira, Edw. Adm. 117; Milles v. Fletcher, 1 Doug. 231; Idle v. Royal Exchange Assur. Co., 8 Taunt. 755; Freeman v. East India Co., 5 Barn. & Ald. 617; Cannan v. Meaburn, 1 Bing. 243; Read v. Bonham, 3 Brod. & B. 147; Underwood v. Robertson, 4 Camp. 138. Abbott, in his work on Shipping, says the master possesses every power necessary for the employment and navigation of the ship; and he admits that, in a case of extreme necessity, he may sell the ship, but insists that he is bound, before exercising that authority, to try every other expedient to raise money. Abb. Shipp. 9. But the rule is much better stated by Parke Baron, in Hunter v. Parker, 7 Mees. & W. 342, to which special reference is made. He says that the master has by virtue of his employment, not merely those powers which are necessary for the navigation of the ship, and the conduct of the adventure to a safe termination, but also a power when such termination becomes hopeless, and no prospect remains of bringing the vessel home, to do the best for all concerned, and therefore to dispose of the ship for their benefit.

The libellant admits that it is well settled in this country that the master, in a case of necessity, may sell his ship, and the admission is a very proper one in this court, as the point has been at least three times authoritatively decided by the supreme court of the United States. Patapsco Ins. Co. v. Southgate, 5 Pet. [30 U. S.] 620; New England Ins. Co. v. The Sarah Ann, 13 Pet. [38 U. S.] 400; Post v. Jones, 19 How. [60 U. S.] 157. Speaking of the authority of the master to sell his ship, Mr. Justice Thompson said in the first case cited, that there can be no doubt that the injury to the vessel may be so great and the necessity so urgent, as to justify a sale. There must be, says the court, this implied authority in the master, from the nature of the case. He, from necessity, becomes the agent of both parties. and is bound in good faith to act for the benefit of all concerned; and the underwriter must answer for the consequences. because it is within his contract of indemnity. All the circumstances must be submitted to the jury, and they must find both the necessity and the good faith of the master in order to justify the sale. The opinion of the court in the second case was delivered by Mr. Justice Wayne, who does not stop to argue the question of authority, as that had been decided in the preceding case, but proceeds at once to the statement of the conditions under which it must be exercised, in order that the sale may be held valid. Those

conditions as there stated are, that the master must act in good faith, exercise his best discretion for the benefit of all concerned, and that the sale can only be made upon the compulsion of a necessity, to be determined in each case by the actual and impending peril to which the vessel is exposed, from which it is probable, in the opinion of persons competent to judge, that the vessel cannot be saved. He admits, however, that the necessity for a sale cannot be denied, when the peril, in the opinion of those capable of forming a judgment, makes a loss probable, although the vessel may in a short time afterwards be got off and put afloat. Mr. Justice Grier delivered the opinion in the third case cited; and he affirms that it cannot be doubted that a master in certain cases of absolute necessity has power to sell both vessel and cargo. Such a necessity may be held to exist, say the court in that case, where the vessel is disabled, stranded, or sunk, if it appear that the master had no means, and could raise no funds to repair, so as to prosecute his voyage. Unless the vessel is so disabled that it is rendered unsafe for her to proceed on her voyage, the question as to the necessity of selling her cannot arise. Nothing short of proof of that fact will authorize the conclusion that the authority of the master was so enlarged that he became the agent of all concerned, and that he was clothed with power to determine in their behalf what should be done for their common interest. Prince v. Ocean Ins. Co., 40 Me. 493. When the vessel is so disabled that she cannot proceed on her voyage, and the master has no funds to make the necessary repairs to enable her to proceed, and cannot raise any for that purpose, by bottomry or otherwise, he must determine, in the absence of the owner, what the interest of all concerned requires him to do. His authority in the premises under those circumstances, is not derived from the owner, but is devolved upon him by law, and consequently it is his duty to act according to his best judgment. Sale of the ship is a necessity within the meaning of the commercial law, when under the circumstances indicated, nothing better can be done for the benefit of the owner or those concerned in the adventure. If the voyage be broken up in the course of it, by ungovernable circumstances, the master, says Chancellor Kent, may sell the ship, provided he do so in good faith, for the good of all concerned, and in a case of supreme necessity, which sweeps all ordinary rules before it. 3 Kent, Comm. 173. Neither necessity nor good faith is alone sufficient to make such a sale valid, but both must concur, and must be affirmatively shown by the party setting up the sale. The Henry [Case No. 6,372].

My judgment is, said Judge Story, upon the most careful survey of the authorities, as well as upon the general principles of law, that the master has a right to sell the ship in cases of urgent necessity; and I adopt the argument at the bar, that it must be proved that there was a pressing necessity to justify the sale. The Tilton [Case No. 14,054]. Other courts of the highest respectability have employed the same or similar expressions; but the explanations of Tindal, Ch. J., in Somes v. Sugrue, 4 Car. & P. 282, show to a demonstration that there cannot be in such a case either a legal or physical necessity, and consequently that it is only a moral necessity which is required to be shown, in order that the sale may be held to have been justified. Two decisions of Judge Story in this circuit are also to the same effect. Pope v. Nickerson [Case No. 11,274]; Robinson v. Commonwealth Ins. Co. [Id. 11,949]. Whether the necessity actually exists or not depends upon the circumstances, and so when carefully examined are all the well-considered cases. Gordon v. Massachusetts F. & M. Ins. Co., 2 Pick. 249; The Sarah Ann [Case No. 12,342]; Hall v. Franklin Ins. Co., 9 Pick. 476; American Ins. Co. v. Center, 4 Wend. 51; Peirce v. Ocean Ins. Co., 18 Pick. 83.

Different forms of expression are employed by different courts and jurists in describing the degree or intensity of the necessity which is required to justify the sale. Doubts are entertained whether any of the epithets, so employed, express very fully or definitely the precise idea intended to be conveyed. Perhaps it is not possible to devise any rule which will apply to all cases, but it is believed that some approximation may be made in that direction.

When the ship is disabled by perils of the sea, and the master has no means of getting the repairs done in the place where the injury occurred, or, if being in a place where the repairs might be made, he has no funds in his possession and cannot, on account of the distance or other sufficient cause, communicate with the owner, and is not able to raise the necessary means by bottomry or otherwise to execute the repairs, or if the injuries to the ship are so great that the cost of repairing her would be greater than her value after the repairs were made, or if the ship is disabled so that she cannot proceed, and the cost of repairs will amount to more than half her value, reckoning one third new for old, and the master has no funds, and can neither procure any nor communicate with the owner, and the whole circumstances are such that a prudent owner would decide to break up the voyage, then the master is justified in selling the ship as the best thing that can be done for the interest of all concerned. Such a state of circumstances creates the moral necessity, the urgent necessity, the extreme necessity, the imperious, uncontrollable necessity, described in the decided cases, and authorizes the master to sell the ship, if in his judgment, honestly exercised, the sale will best promote the interest of all concerned. When those condi-

tions, or any class of them, concur, it becomes the duty of the master to decide the question; and if he finds that the disaster will be most alleviated, and the interests of all will be best served by a sale, then it is his duty to act in the premises; and if he makes the sale bona fide as the agent of all concerned, it is valid, and all are bound by his acts. Reference is made by the libellant to certain recent decisions in the admiralty court of the parent country, in which it is supposed that a more stringent rule is laid down, but a careful examination of the cases will show that they do not warrant any such conclusion. Cases referred to are the following: The Eliza Cornish, 1 Spinks, 46; The Glasgow, 1 Swab. 146; The Margaret Mitchell, Id. 386; The Australia, Id. 484; The Bonita & Charlotte, 1 Lush. 252, 261.

The general rule is, says Dr. Lushington, in the case first cited, that the master has no authority to sell the ship, but he adds that, "whatever opinion may have been doubtfully expressed on the subject, it appears to me clear, upon reason and authority, looking at what the law now is, that in case of necessity he must be invested with that power." Borrowing the language of the opinion in the case of Robertson v. Clarke, 1 Bing. 445, he says: "I agree that it is not sufficient to show that the sale was bona fide and for the benefit of all concerned, unless it be also shown that there was an urgent necessity for its being resorted to." The same rule is laid down in the second case, but the same judge says that "the necessity is to be judged by all the circumstances: 1. The state and condition of the vessel. 2. The consequences of not proceeding to sell. 3. The facility of communicating with the owner. 4. The resources of the master, or the total absence of all resources. 5. The power and means of the owner to avert a sale." The third case asserts that it is clear from the authorities that, though in early times the validity of a sale by a master in a foreign port was doubted, yet now it is decided that he has an implied authority in cases of extreme necessity, and in those only. Judgment was also pronounced in the fourth case by the same learned judge, and in that he states that the necessity which the law contemplates is not an absolute impossibility of getting the vessel repaired, but if the ship cannot be sent upon her voyage without repairs, and if the repairs cannot be done except at so great and so certain a loss that no prudent man would venture to encounter it, that constitutes a case of necessity; and he states the rule in the fifth case in the same language as in the first, and borrows it from the same source. Taken as a whole, these cases, I think, confirm the rule as before explained. Applying that rule to the present case, it is quite clear what the result must be. The record shows that the vessel sailed for Boston on the 16th of March,

1862, and that she was stanch and in good repair. Full proof is exhibited that she encountered severe storms, was struck by a heavy sea, and was so badly crippled, injured, and broken that it was with difficulty that she arrived at Port au Prince. Due protest was made by the master, and she was, three times surveyed. The first two surveys recommended temporary repairs to enable her to proceed to her port of destination. The surveyors' reports describe in detail the apparent injuries to the vessel, and specify the temporary repairs required to enable the vessel to proceed. They show, when taken in connection with the statements of the protest and the parol testimony, that the vessel as examined upon the outside and with the cargo on board, was very badly stove and crippled, and that she was emphatically disabled from proceeding on the voyage. The second report states that the surveyors recommend that "the vessel be repaired here sufficiently for her to proceed on her voyage to Boston. It being well understood that total and adequate repairs to the damage which the vessel has suffered are impossible in this port." Temporary repairs were accordingly made at the cost of $1,000; but the third report shows that upon taking off the side planking to replace the same by new, as was ordered in the second report, the injuries to the vessel were found to be very much greater than was supposed or could have been known when the prior surveys were made. On the last survey were three competent masters of vessels, Lloyd's agent, and the agent of the New York and Philadelphia underwriters. They all agreed that it was not possible to make the necessary repairs in that port in a proper manner; that even if the necessary materials could be obtained, it would cost, in addition to the $1,000 which had been expended, not less than $3,500 Spanish, and that it would take four months to make the repairs; and they also found that the whole cost of repairs would be more than the vessel would be worth after the repairs were made. Their report I think is sustained by the evidence in the case.

Sale of the vessel was accordingly made on 12th of June, 1862, for the benefit of all concerned, and the claimant became the purchaser for the sum of $407 in gold. Claimant repaired her at a cost of $1,695.31 in gold, and despatched her to Boston. She was libelled here shortly after her arrival, and was sold under the order of the district court. The proceeds of sale amounting to the sum of $2,138.64 remain in the registry of the court. Libellant claims a lien on the vessel for so much of the cargo as was sacrificed for the common benefit, and also for so much of the cargo as has not been delivered. He resists the sale as unauthorized; but I am of the opinion that it was clearly justified within the principles already explained.

The second proposition of the libellant is,

that the sale, even if necessary and valid, operated only to pass the title of the owner, and that the purchaser took his title, subject to the lien of the libellant; but I am of the opinion that the circumstances which create the moral necessity for the sale of the ship in a case like the present, have the effect to constitute the master the agent for all concerned, and consequently that the title of the purchaser became complete and absolute. The Tilton [supra]; Milles v. Fletcher, 1 Doug. 232; Idle v. Royal Exchange Assur. Co., 8 Taunt. 755.

On this point I adopt the views of the respondents, that the lien when the ship was lawfully sold, was transferred to the proceeds which became by operation of law the substitute for the ship in the sense of the admiralty law. Brown v. Lull [Case No. 2,018]; Sheppard v. Taylor, 5 Pet. [30 U. S.] 675. Bear in mind that the sale in this case was a sale from necessity; and I am of the opinion, notwithstanding the doubt expressed in the case of The Catherine, 1 Eng. Law & Eq. 681, that the purchaser took a full title free of the lien set up by the libellant. Unless such be the law, then the authority conferred to sell in a case of necessity is a mockery, as no prudent man would ever purchase such a title.

Having come to these conclusions, it is unnecessary to decide the other questions discussed at the bar. Decree affirmed. Libel dismissed with costs.