IN THE MATTER OF DAVID M. RIPLEY, ASSIGNEE OF MURRAY FERRIS & CO.

(Decided April 5th, 1880.)

Where an insured vessel is injured to such an extent as to give the owners a right, under the policy, to abandon her to the underwriters as constructively a total loss, her seamen are not thereby deprived of their lien for wages, as in case of an actual total loss ; the lien attaches to the proceeds derived from the sale or other disposition of the vessel ; and if the owners, in the exercise of their right, abandon the vessel to the underwriters and receive the insurance, the seamen are entitled to their wages out of the insurance money, and have a preference in the distribution of an estate assigned by the owners of the vessel for the benefit of their creditors.

APPEAL from an order of this court upon a petition by an assignee for benefit of creditors, determining that wages of officers and seamen of a steamship were not entitled to preference in payment over other claims against the assigned estate.

*Henry Heath*, for appellants.

*John Sherwood* and *Owen & Gray*, for respondents.

Matter of Ripley.

CHARLES P. DALY, Chief Justice.—In the facts agreed upon, it is stated that the vessel was injured to such an extent, that the owners had a right, under the policy, to abandon her to the underwriters, as constructively a total loss; and the case below appears, from the opinion of Judge VAN HOESEN, to have been decided upon the assumption that she was so abandoned, but that that would give the seamen no claim upon the insurance effected by the owners on the ship. If a ship is lost, the seamen lose their wages, with the loss of the vessel; but if, as in this case, the vessel is brought into port, but so injured as to allow of her abandonment by the owners to the underwriters, the lien of the seamen still attaches. It is no obstruction to—that is, it does not prevent—the abandonment of her to the underwriters; but the abandonment does not release the lien, and it will attach to the proceeds derived from the sale or other disposition of the vessel. The seamen, consequently, have a right to follow the proceeds; and if the owners, in the exercise of their right, abandon the ship to the underwriters, as constructively a total loss, they are, I think, bound to pay the wages of the seamen, out of the insurance which they have received. It has been held that where the vessel, in consequence of great or irreparable damage, is sold by the master or owners, the wreck being sold before the seamen can libel to enforce their lien, they may follow the proceeds in the hands of the owners, which, as respects their lien, has become a substitute for the ship (*Flaherty* v. *Doane*, 1 Low. 184; *Fitz* v. *The Amelia*, 2 Cliff. 440; *The Syren*, 7 Wall. 152; *Sheppard* v. *Taylor*, 5 Pet. 675). It was held in *Delaware, &c. Ins. Co.* v. *Gosler* (96 U. S. [6 Otto] 645), in the case of a bottomry bond, that as long as the vessel exists, although it might cost more than her value to repair her, it is not an utter loss, as respects her hypothecation upon the bottomry bond; that nothing short of the total destruction of the ship will constitute an utter loss, within the meaning of such a maritime contract; that if she still exists, although in such a state of damage as to be constructively totally lost, within the meaning of a policy of insurance, it is not an utter loss within the meaning of such a contract; that the lien attaches, and is,

so far as what remains of the vessel, preferred to all other claims, except those of the seamen for their wages, or the claims of the salvors for subsequent service, in preserving the vessel, or what remains of her; that the bottomry bond attaches to the very last plank; and that the holder of the bond may have that sold for his benefit. All this applies to the lien which the seamen have upon the vessel—or what remains of her—for the payment of their wages, and their lien cannot be divested by the exercise of the right which the owner has, to abandon her to the underwriter as constructively a total loss, that he may get the whole of the insurance. If he does so, and receives the insurance, then, out of that insurance, he should pay the wages of the seamen, if the vessel when abandoned could have been sold for enough to pay them, which, in this case, was probably the fact; as the vessel was brought into port, though so damaged as to justify her abandonment to the underwriters. The difficulty in this case, however, is that we have not sufficient facts to determine whether the seamen's claim for wages should be paid out of the insurance or not; for it does not appear whether the vessel was abandoned to the underwriters, or whether she was sold for what she was then worth, by the owners, or, in fact, what disposition was made of her. As the case is one where the direction of the court is asked as to what an assignee for the benefit of creditors is to do in respect to a claim of this kind, the insolvent estate being in administration in this court, I think the proper course is to reverse the present order, as the ground upon which the application was denied was erroneous, leaving the claimants to renew their application to the court below, by presenting to it such additional facts, if they could do so, as would authorize the court to direct the wages to be paid out of the insurance money that is to come to the assignee for the benefit of the creditors, after the payment of such charges as may be upon it.

LARREMORE and J. F. DALY, JJ., concurred.

Order reversed.

The application was subsequently renewed, upon a petition setting forth additional facts, which are stated in the following

opinion. The petition having been again denied, an appeal was taken to the general term from the order denying the petition, upon which the following decision was rendered (January 3d, 1881).

CHARLES P. DALY, Chief Justice.—I think the facts now admitted are sufficient to entitle the seamen to be paid their wages out of the insurance. The previous admission was, that the vessel, when she entered the port of Nassau, was injured to an extent which permitted her abandonment to the underwriters as a constructive total loss; and that, after the delivery of the cargo, the seamen were discharged by the owners at Nassau, and sent home by them without the payment of their wages, but with the promise that their wages would be paid to them on reaching New York. It also appears by the further admission, that notice of abandonment was served upon the American underwriters, but not upon the Glasgow Insurance Company, which, however, is not material, as that company has paid the insurance at the same rate as the American companies to whom notice had been given. It is also further admitted, that, after the vessel was taken into the harbor of Nassau, she was, after a survey, condemned; that she was libeled by salvors in Nassau; and under a decree of a court of vice-admiralty there, sold for an amount insufficient to pay the claims of the libelants for salvage and the expenses. These subsequent admissions remove the difficulty which existed when the case was previously before the general term, which was, that it did not appear whether the vessel had been abandoned to the underwriters, or whether she was sold for what she was then worth, or what disposition had been made of her. The facts however, now admitted, show that nothing remained of the vessel but the insurance, which had been paid by the underwriters; and to that insurance, under our view of the law as already expressed, the maritime lien attaches, and has a preference over the creditors of the owners of the vessel—Murray, Ferris & Co. Upon the facts now appearing, the assignee is, in my opinion, authorized to, and for his protection, should be directed by the judgment to be entered, to pay the unsettled claims of the mariners before any portion of the insurance

money is applied to the discharge of the claims of creditors of Murray, Ferris & Co.

J. F. DALY, J., concurred.

Order reversed, and seamen's wages directed to be paid out of the insurance moneys in the hands of the assignee.