EPHRAIM C. GATES and another vs. JAMES THOMPSON.

The sale by the master of a vessel of such parts thereof as belong to part-owners who were not, but might have been, notified of her peril in season to act in the premises before the sale, is void.

A master may sell the whole or a part of a vessel according to his authority.

ON EXCEPTIONS.

DICKERSON, J. TROVER for the alleged conversion of one-sixteenth of a brig. The plaintiffs claim title as original part-owners, and the defendant as vendee of the vessel at a sale by the master from alleged necessity.

At the time of the sale the master owned one-eighth, his brother one-sixteenth, which the master controlled; Wadsworth Brothers five-eighths, the plaintiffs one-sixteenth, and the remaining one-eighth was owned in New York and Philadelphia.

The master, his brother, and Wadsworth Brothers had their shares well insured; the plaintiffs had no insurance. The master resided in Eastport; L. L. Wadsworth, jr., of the firm of Wadsworth Brothers, resided in Calais; the plaintiffs had their place of business, and one of them, Gates, resided in Calais.

The vessel went ashore on an island known as one of the "Wolves," in the province of New Brunswick, about twelve miles from Eastport, on the morning of July 6, 1866. The master, leaving her in charge of the mate, arrived in Eastport about noon of the same day. He notified L. L. Wadsworth, jr., of the disaster, in season for him to reach Eastport that evening. No notice whatever was given to the plaintiffs, nor were they apprized of the disaster till after the sale.

Protest was duly noted, surveyors were appointed, and the vessel was sold at auction on the afternoon of the following day, by the master, and struck off to the defendant, as the highest bidder, for $1,650. L. L. Wadsworth, jr., was present at the sale.

The defendant got the vessel off about three hours after the sale, and she was towed into Eastport the next day after the sale, where

she was repaired for $5,000. When repaired the vessel was worth $14,000 to $15,000.

All the owners, except the plaintiffs, and the owners residing in New York city, acquiesced in the sale, and received their shares of the proceeds.

The verdict was for the defendant, and the learned counsel for the plaintiffs have reserved several questions of law, but the one most confidently relied upon in the argument, and specially calling for the careful consideration of the court, relates to the rulings of the presiding judge as to the legal effect of the neglect of the master to notify the plaintiffs of the disaster.

In general, the master has no authority to sell the ship. There is, however, an exception to this rule, when she meets with a disaster which renders it necessary to sell her, in order to save a part of her value, rather than to run the risk of a total loss.

The master's right to sell in such an emergency, arises from the necessity of acting before the owners can be consulted. He acts for them, because they have no opportunity to act for themselves. If they are present, his authority to sell ceases. He is bound to exercise the same discretion that an uninsured owner or agent of the underwriters, would exercise if present. Hence it is his duty to notify the parties interested of the disaster, when it can seasonably be done, that they may send him instructions, or be present to judge of the situation for themselves. When their discretion may be called into exercise, there is no occasion for the master to exercise his ; there is no necessity for him to sell, when they may judge of the necessity for a sale themselves. The chance of recovering the vessel is worth as much to the owners as it is to the purchasers. They have a right to the benefit of the choice of the alternatives of risking or selling her, when there is an opportunity for the master to give them seasonable notice of the disaster ; and he cannot devest them of this right. If he undertakes to do so by selling the vessel, the sale will be void as to such owners. Nor is it necessary that the master should fraudulently neglect to give such notice to invalidate the sale. It is the mas-

ter's duty to use the earliest means, ordinarily available, to convey intelligence of the disaster to his owners, when they may thus be reached in season to act before the sale ; and if he neglects to do this, either from indifference, carelessness, or ignorance of duty, the sale will be void as to such part-owners.

This doctrine has been established, and recognized in a harmonious series of decisions of courts of the highest authority, ever since the right of the master to sell the ship from necessity was conceded.

" The true criterion for determining the master's authority to sell," observes Mr. Justice Hayne, in *New England Ins. Co.* v. *The Sarah Ann,* 13 Pet. 387, " is the inquiry whether the owners or insurers, when they are not distant from the scene of stranding, can, by the earliest use of the ordinary means to convey intelligence, be informed of the situation of the vessel, in time to direct the master before she will probably be lost."

In *American Ins. Co.* v. *Center,* 4 Wend. 55, the court say, " The master is not authorized to sell the ship or cargo, except in case of absolute necessity, when he is not in a situation to consult with his owner, and when the preservation of the property makes it necessary for him to act for whom it may concern."

" If the property can be kept safely," say the court in *Hall* v. *Franklin Ins. Co.,* 9 Pick. 466, " until the owners or insurers can be consulted, and have an opportunity, in a reasonable time, to exercise their own judgment in regard to the sale, the necessity to act for them will cease." This was the case of a ship insured in Boston, which went ashore on the Florida shoals, and was taken to Key West, condemned by a survey, and sold by the master. The doctrine is here distinctly laid down, that the necessity which will justify the master of a ship in selling her, is one in which he has no opportunity to consult the owners or insurers, and which leaves him no alternative.

In *Bryant* v. *Commonwealth Ins. Co.,* 13 Pick. 543, the court set aside the third verdict rendered for the plaintiff, it appearing that the master sold the cargo, and broke up the voyage, without

consulting the owners when he might have done so in season for them to act before the sale.

So, also, the sale of a vessel by the master on the alleged ground of necessity, was held void, in respect to the insurers, because he neglected to notify them when he had the opportunity. In this case no notice was given to the other part-owners, by the master who was himself a part-owner, though it might have been given, and on this account the court say, that " if the plaintiff's claim for a total loss stood alone upon the fact of the sale, on the ground that such a sale was authorized by the exigencies of the case, and that thereby the property of the owners was rightfully and legally devested, it is very clear that it could not be maintained." *Pierce* v. *Ocean Insurance Co.*, 18 Pick. 83. The same doctrine has been recognized in this State. *Stephenson* v. *Piscataquis Ins. Co.*, 54 Maine, 55.

The requested instruction affirmed, as matter of law, that it was the duty of the master to notify the plaintiffs of the peril of the vessel, if he had the opportunity to do so, in season for them to act before the sale ; and that if he neglected this duty, and sold the vessel, the sale would be void as to them. It would be difficult to state the law, applicable to this case, with greater precision. It appears from the evidence that the master had ample opportunity to communicate with the plaintiffs in season for them to be present before the sale, and that he neglected to do so. Nor is there any pretense that he was prevented from so doing by any misadventure, mistake, or accident. Indeed, the only grounds upon which the learned counsel for the defendant undertakes to justify the conduct of the master in this particular are, that it is not necessary to notify all the part-owners in such cases, though the master may have the opportunity to do so, and that notice to one of the part-owners was sufficient.

Part-owners of a vessel are not copartners, but tenants in common. Notice to one part-owner is not notice to another, nor has one part-owner any right to sell, authorize or consent to the sale of the interest of his associate part-owner. The duty of the master

to give the notice in question extends to all the part-owners within his means of intercommunication. In this respect there is no distinction between " the small owner " and the large one ; each has an equal right to be present and decide for himself whether he will sell his share, or run the risk of losing it, when the master has an opportunity to give him seasonable notice of the peril of the vessel. This duty of the master is not one which he is at liberty to perform or neglect at pleasure. Nor will the same consequences alike follow its neglect and its performance. The law will not sanction acts done in violation of a legal duty. The requirement which the law makes upon the master in this behalf, means something or nothing ; if it means anything, the plaintiffs were entitled to the benefit of the instruction requested. The relaxation of this rule as contended for by the counsel for the defendant, would fritter away one of the great safeguards the law has thrown around the commercial and navigation interests of the country, and put in peril those efficient instrumentalities which have contributed so largely to produce the present advanced state of civilization.

The instruction of the presiding judge as to the effect of the omission to notify " a small part-owner," is also objectionable, as calculated to give the jury the impression that the master, as matter of law, must sell the whole, if any, and cannot sell a part of the vessel. The master may sell the whole, or a part of the vessel, according to his authority. He may sell his own share and no more, if he be a part-owner ; he may also sell the shares of such owners as, being notified, give him authority to sell, and the interests of such part-owners as cannot be seasonably notified of the disaster.

" When," says C. J. Shaw in *Pierce* v. *Ocean Ins. Co.*, 18 Pick. 83, " a master stands in a double capacity, in one of which, namely, as master, he has no authority to make a sale, and, in the other, as owner, he has such authority, and makes a sale ; in whatever right or capacity he may profess to act, his act would take effect according to his authority." This case is conclusive of the right of the master to make a valid sale of the whole or a part of the vessel,

according to the extent of his authority. If he sell the whole, when he has authority to sell only a part, the sale will be valid as to that part, and void as to the rest.

As the case must go back for another trial, it is unnecessary to consider the other questions raised in the bill of exceptions, or the motion to set aside the verdict as against evidence.

*Exceptions sustained.*

*Verdict set aside. New trial granted.*

APPLETON, C. J.; CUTTING, KENT, and BARROWS, JJ., concurred.

*Granger & Pike*, for the plaintiff.

*Bion Bradbury & French*, for the defendant.